919 THIRD AVENUE  NEW YORK  NEW YORK  10022-3908

**JENNER&BLOCK** LLP

December 23, 2013

Andrew H. Bart
Tel 212 891-1645
Fax 212 909-0805
abart@jenner.com

**VIA ECF AND EMAIL**

Honorable Analisa Torres
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Arista Music, et al. v. United Airlines, Inc., et al.*, Case No.: 13 Civ. 7451 (AT)

Dear Judge Torres,

      We are counsel for the plaintiffs in the above-referenced matter (collectively referred to herein as "Plaintiffs"). In compliance with the Court's Individual Practices in Civil Cases, Plaintiffs write to respond to the pre-motion letters of Defendants United Airlines, Inc. (hereinafter referred to as "United") and Inflight Productions, Ltd. (hereinafter referred to as "Inflight") (collectively referred to herein as "Defendants").

      Contrary to the assertions in United's December 16 letter and Inflight's December 17 letter, the purpose of the preemption provision of the Airline Deregulation Act of 1978 (hereinafter referred to as "ADA") was to prevent inconsistent state regulation of airline prices, routes, and services, not to immunize theft. Here, only state law provides protection against the theft of Plaintiffs' pre-1972 works. Section 301(c) of the Copyright Act simultaneously provides federal copyright protection to sound recordings created on or after February 15, 1972, and ensures that robust state protection for pre-1972 recordings are not limited by the Act. Specifically, it provides: "With respect to sound recordings first fixed before February 15, 1972, *any rights or remedies* under the common law or statute of any State *shall not be annulled or limited* by this title until February 15, 2067." U.S. Copyright Act, 17 U.S.C. § 301(c) (emphasis added). Finding ADA preemption here of the state copyright claims would directly contravene the purpose of Section 301(c) and lead to the absurd result where Defendants are prohibited from stealing federally copyrighted works, but allowed to steal any works protected by state law.

      Case law makes clear that Congress did not intend such a result when it enacted the preemption provision of the ADA. Defendants' preemption arguments fail because: (1) the state law claims survive under the *Rombom v. United Airlines* test; (2) the state law claims have little

CHICAGO  LOS ANGELES  NEW YORK  WASHINGTON, DC                    WWW.JENNER.COM

December 23, 2013
Page 2

to no effect on airline fare pricing; and (3) the effect of state law claims against Inflight on airline prices and services is even more tenuous, remote, and peripheral.

1. **The ADA Does Not Preempt Plaintiffs' State Law Claims Under the *Rombom v. United Airlines* Test.**

By Defendants' theory, the ADA immunizes airlines even from state laws relating to theft, and airlines could as a result steal the food they serve in flight or even the aircraft they use to provide services. However, contrary to Defendants' assertions, both the Supreme Court and the Second Circuit have clearly stated that the ADA does not preempt all state law claims relating to airline services. In interpreting the reach of the ADA preemption provision, the Supreme Court noted that the it "do[es] not set out on a road that leads to pre-emption of state laws against gambling and prostitution *as applied to airlines*" and cautioned that "some state actions may affect airline fares in too tenuous, remote, or peripheral manner to have preemptive effect." *Morales v. Trans World Airlines*, 504 U.S. 374, 390 (1992) (emphasis added) (alteration and internal quotation omitted). Similarly, the Second Circuit held that courts must "apply the ADA preemption provision . . . on a case-by-case basis" by analyzing the strength of the state law action's relation to prices, routes, and services. *Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 87 (2d Cir. 1997) ("If state laws [] are preempted merely because they can be said to broadly and generally 'relate to prices or services' only in some tenuous, remote or peripheral way and thus preempted, then it is federal law which is unnecessarily interfering with legitimate state laws and policies. We do not believe that congressional intent should be so broadly interpreted without clear justification.")

In accordance with this language, numerous district courts in this Circuit have adopted the three-part test established in *Rombom v. United Airlines, Inc.*, 867 F. Supp. 214 (S.D.N.Y. 1994) (Sotomayor, J.) to determine whether a state law claim concerning an alleged airline service is preempted by the ADA. *See, e.g.*, *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 400 (S.D.N.Y. 2004) ("District courts in this Circuit . . . generally apply the case-by-case tripartite test outlined by Judge Sotomayor in *Rombom v. United States* . . . ."). Under this test, a court must first determine whether the activity at issue in the claim is an airline service. Second, if the activity implicates a service, the court must then determine whether the claim affects the airline service directly or only tenuously, remotely, or peripherally. Third, only if the question directly implicates a service, then the court must determine whether the underlying tortious conduct was reasonably necessary to the provision of the service. *Rombom*, 867 F. Supp. at 221–22. Defendants cannot demonstrate that the state law claims affect the provision of in-flight music directly, nor that their action of stealing Plaintiffs' pre-1972 copyrighted works was reasonably necessary.

First, Defendants' arguments for preemption fail because the state law claims only affect airline service peripherally. State law claims directly implicate a service when the allegations challenge the manner in which the service is provided or the adequacy of the service. *Id.* at 223.

December 23, 2013
Page 3

In contrast, where the "essence of the state law claim is that the air carrier abused its authority to provide a given service, the air carrier is not entitled to the protection of [the ADA]" because the effect on the service itself is too tenuous, remote, or peripheral. *Rombom*, 867 F. Supp. at 224.

Here, Plaintiffs do not assert that United cannot choose to provide products such as interactive, on-demand or linear, pre-programmed music or that such offerings were provided in a defective or inadequate manner. Instead, Plaintiffs assert that Defendants abused United's authority to provide music service by choosing to use pre-1972 works in which the Plaintiffs own a property interest without license and without payment. Compl. ¶¶ 22–30; *see, e.g.*, *Rombom*, 867 F. Supp. at 224 (holding state tort claims survived second step of the test where plaintiff essentially alleged that the airline had abused its authority to ensure passenger safety by improperly causing her arrest).

Second, Defendants' arguments for preemption fail because the act of exploiting Plaintiffs' pre-1972 copyrighted works without license or payment is not reasonably necessary to the provision of the service, nor does it further the provision of the service in a reasonable manner. *See Rombom*, 867 F. Supp. at 222, 224. To demonstrate a viable basis for preclusion, Defendants must demonstrate that the provision of in-flight music using stolen work was reasonable and within the scope of normal aircraft operations. *Id.* They cannot do so. Defendants themselves acknowledged that they were using Plaintiffs' works in their in-flight musical offerings and that they needed "to put the necessary licenses in place." Compl. ¶¶ 25–26. Defendants could have chosen to either obtain the proper licenses and pay fees for Plaintiffs' pre-1972 works or refrain from using Plaintiffs' pre-1972 works as part of their in-flight programming. Having not done so, they cannot assert that their appropriation of Plaintiffs' property is reasonable now or that the ADA protects airlines and their vendors from liability for such wrongdoing.[1]

### 2. The ADA Does Not Preempt Plaintiffs' State Law Claims Because the Proper Payment of Licensing Fees Has No Effect on Airline Fare Pricing.

Independently, Defendants' conclusory argument that the Court should dismiss the state law claims at this stage because the claims would directly affect price is wholly without merit. In effect, Defendants argue that when an airline steals goods or services it is nevertheless entitled to immunity because fares would rise if they properly paid for those goods and services. The overarching goal of the ADA was to help assure "transportation rates, routes and services reflected maximum reliance on competitive market forces," not rates or services distorted by cost

---

[1] Further, to the extent that Defendants intend to assert that they did have proper licenses in place, this creates an issue of fact regarding reasonableness that is not appropriate for resolution on a motion to dismiss. *Rombom*, 867 F. Supp. at 224 ("The determination of reasonableness for [ADA preemption] purposes is a question of law either where no dispute exists as to the extent of the conduct, or where a court accepts plaintiff's version of the conduct.")

December 23, 2013
Page 4

savings resulting from theft. *See Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (internal quotation and alterations omitted).

Putting aside the absurd premise of Defendants' argument, even the contention that fares would rise is subject to dispute and requires fact discovery. The Second Circuit has stated that preemption based on airline fare pricing "can not be easily determined from the pleadings." *Abdu-Brisson*, 128 F.3d at 84. This is because, "[a]s a matter of airline economics, not every airline cost has the requisite connection with and effect on fares to justify preemption." *Id.* Thus, even where in the abstract the proper payment of licensing fees could affect price, this must be substantiated with evidence. *See id.*

### 3. The Effect of State Law Claims Against Inflight on Airline Services or Fare Prices Is Even More Tenuous, Remote, and Peripheral.

Any motion to dismiss filed by Inflight will fail for the reasons articulated above, and for the additional reason that the effect of state law claims against Inflight on airline prices and services is even more tenuous, remote, and peripheral. None of the authority relied upon by Inflight supports its argument. Inflight itself is not an air carrier under the ADA. 49 U.S.C. § 40102(a)(1) (defining "air carrier" as "a citizen of the United States undertaking means, directly or indirectly, to provide air transportation"). Nor is Inflight an agent with whom air carriers have contracted to perform the actual service in the air carriers' stead. *See Huntleigh Corp. v. La. State Bd. of Private Security Examiners*, 906 F. Supp. 357, 362 (M.D. La. 1995). Instead, Inflight is a mere vendor that creates audio programs and provides them for use in interactive, on-demand and linear, pre-programmed music offerings of not just airlines, but cruise lines and other clients for a fee.

Under Inflight's theory, any cost associated with running an air carrier would necessarily relate to the rates or services of an air carrier. This is incorrect. *See, e.g.*, *Stearns Airport Equip. v. FMC Corp.*, 977 F. Supp. 1263, 1268 (N.D. Tex. 1996) (holding the ADA did not preempt state law claims for unfair competition and tortious interference where the alleged state action of selling passenger boarding bridges themselves had too tenuous, remote, or peripheral effect on prices, routes, or services). It would be absurd to hold that a vendor is immune to state laws protecting against theft that apply generally to all individuals and businesses merely because the vendor has among its customers an airline. The purpose of the ADA was to deregulate airlines, not to allow vendors to airlines to evade the consequences and responsibilities of state law.

\*   \*   \*

Though Plaintiffs did not oppose Defendants' request for permission to file a motion, Plaintiffs strongly believe it unlikely that briefing the motion to dismiss will lead to any significant narrowing of the case. Any motion to dismiss will be wrong on the merits and

December 23, 2013
Page 5

premature given lingering fact issues. We look forward to discussing the issue with the court at the pre-motion conference.

                                          Respectfully Submitted,

                                          */s/ Andrew H. Bart*

                                          Andrew H. Bart
                                          Attorney for Plaintiffs

cc:    Kenneth L. Steinthal, Esq. (By Electronic Mail)
        Jeffrey S. Seddon, Esq. (By Electronic Mail)
        Theodore C. Max, Esq. (By Electronic Mail)
        Kenneth B. Anderson, Esq. (By Electronic Mail)
        Martin D. Katz, Esq. (By Electronic Mail)