ROBERT W. CLARIDA
REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th Floor
New York, NY 10022
(212) 209-3044
rclarida@reitlerlaw.com
*Attorneys for Defendant Inflight Audio Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

ARISTA MUSIC, ARISTA MUSIC LLC,
LAFACE RECORDS LLC, SONY MUSIC
ENTERTAINMENT US LATIN INC., AND
ZOMBA RECORDING LLC,

<em>Plaintiffs,</em>

v.

UNITED AIRLINES, INC.; INFLIGHT
PRODUCTIONS LTD., RIGHTSCOM LTD.
AND INFLIGHT AUDIO, LTD.

<em>Defendants.</em>

-------------------------------------------------------------x

Civil Action No. 13-CV-7451 (AT)

ECF Case – Electronically Filed

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
DISMISS AMENDED
COMPLAINT PURSUANT TO
FRCP 12(b)(2)**

<strong>ORAL ARGUMENT REQUESTED</strong>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

I.   INTRODUCTION ........................................................................................................1

II.  STATEMENT OF FACTS ...........................................................................................1

III. ARGUMENT ................................................................................................................3

   A.   The Assertion of Personal Jurisdiction Over Inflight Dublin Would Exceed the Bounds
        of Constitutional Due Process Under the Fourteenth Amendment ...............................3

      1.   There Is No Basis for Asserting General Jurisdiction ..........................................3

      2.   There Is No Basis for Asserting Specific Jurisdiction .........................................3

   B.   Inflight Dublin's Acts Have Not Caused Injury Within New York ................................9

   C.   Amendment Would be Futile............................................................................14

CONCLUSION ...................................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428 (2d Cir. 1971) ...................................................................................................................................10

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ................................................................................11

*Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103 (S.D.N.Y. 1994) ...................................................17

*Bell Atlantic v. Twombly*, 550 U.S.544 (2007) ........................................................................11

*Burger King Corp. v. Rudzewicz,* 471 U. S. 462 (1985)................................................................5

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000)........................................................................14

*Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317 (1980).......................................10

*Hanson v. Denckla*, 357 U.S. 235 (1958) ...................................................................4, 5, 6, 7

*Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U. S. 408 (1984) ...............................5

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945) ...............................3, 4, 5, 6

*Lehigh Valley Indust. v. Birenbaum,* 527 F.2d 87 (2d Cir. 1975)................................................10

*Milliken* v. *Meyer*, 311 U. S. 457 (1940) .................................................................................5

*Penguin Group (USA) Inc. v. American Buddha*, 16 N.Y.3d 295 (2011) ...................10, 11, 12, 13

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117 (2d Cir. 2007) .............................14

*Rush v. Savchuk*, 444 U.S. 320 (1980)........................................................................................4

*Smith v. U.S.*, No. 13–292–cv, 2013 WL 6596922 (2d Cir. Dec. 17, 2013)...................................14

*Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010) .......................................................................14

*Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89 (2d Cir. 1985) .................17

*Troma Entertainment v. Centennial Pictures, Inc.,* 729 F.3d 215 (2d Cir. 2013) .................passim

*Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*, No. 13–1639–cv, 2014 WL 1099222 (2d Cir. Mar. 21, 2014)...............................................................................14

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ...............................................................................passim

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ...............................................5, 8

**Statutes**

17 U.S.C. § 106(6) ................................................................................................................15, 16, 17

**Other Authorities**

79 Fed. Reg. 10571 (Vol. 79, No. 37, Feb. 25, 2014) ....................................................................17

William F. Patry, PATRY ON COPYRIGHT at § 17:172 (Thomson/West 2014) ..................................9

**Rules**

N.Y. C.P.L.R. § 302(a)(3)(ii) ...................................................................................................passim

## I.      INTRODUCTION

Plaintiffs' assertion that this Court has personal jurisdiction over defendant Inflight Dublin, based upon Inflight Dublin's duplication of sound recordings exclusively in Ireland and the subsequent performance of those recordings by a third party in the U.S., is insupportable as a matter of fact, and would violate both the New York long arm statute, N.Y. C.P.L.R. § 302(a)(3)(ii), and Constitutional due process guarantees under the Fourteenth Amendment as a matter of law.  Plaintiffs' Amended Complaint should therefore be dismissed with prejudice as to Inflight Dublin, because the lack of personal jurisdiction is clear from the allegations of the Amended Complaint, Plaintiffs' own concessions in pre-motion correspondence with this Court, and the undisputed facts set forth in the accompanying Declaration of John White ("White Decl.") and exhibits attached thereto.

## II.     STATEMENT OF FACTS

This dispute involves the allegedly unlicensed digital audio transmission of Plaintiffs' sound recordings to passengers aboard United Airlines ("United") flights in the U.S.  As set forth below, Inflight Dublin, which has no relationship at all with co-Defendant Inflight Productions, Ltd., had a very limited and fully licensed role in the provision of the sound recordings that United allegedly performed.  Acting entirely within Ireland, and under a proper and fully-paid license from Phonographic Performance Ireland ("PPI"), the authorized Irish collecting society for record labels including Plaintiffs, Inflight Dublin duplicated or "dubbed" the recordings that were further duplicated by United's contractor, Panasonic Avionics, and ultimately loaded onto United aircraft and performed by United.  Plaintiffs' claim against Inflight Dublin is therefore for secondary liability, deriving from United's allegedly unlicensed U.S. performances.

156894                                          1

Inflight Dublin is based in Dublin, Ireland. Declaration of John White In Support of Motion to Dismiss Amended Complaint ("White Decl.")  at ¶ 2.  It neither has, nor ever has had, an agent or sales representative in New York. *Id.* at ¶ 3.  It has never had a bank account or owned property in New York. *Id.* at ¶ 4.  It did not reproduce, distribute, perform or otherwise use any of the sound recordings at issue in New York, *id.* at ¶ 5, and it never reproduced, distributed, or made any other use of the music videos in suit. *Id.*

Inflight Dublin did not install the subject recordings on any United aircraft, *id.* at ¶ 11. and Inflight Dublin did not exert control over the allegedly infringing performances of United, in New York or elsewhere.  Indeed, Inflight Dublin lacked even a theoretical ability to control United's activities under the relevant agreements, see White Decl. ¶ 6 and Exh. A. Accordingly, Inflight Dublin did not "manage" the on-board music offering of United, *id.*, and was never even informed about the territories in which United planned to perform the recordings at issue. *Id.* at ¶ 7.

All of Inflight Dublin's activities in connection with the matters alleged in the Amended Complaint occurred in Dublin, Ireland, *id.* at ¶ 8, pursuant to a license from Phonographic Performance Ireland ("PPI"), the authorized Irish collecting society for Plaintiffs. *Id.*  Inflight Dublin paid PPI for these licenses, on time and fully. *Id.* at ¶ 9. Inflight Dublin duplicated the recordings at issue for co-defendant United Airlines, a Delaware corporation with its headquarters in Illinois, under a contract governed by Illinois law. *Id.* at ¶ 10.  The subject recordings were further duplicated by United's contractor, Panasonic Avionics, and ultimately loaded onto United aircraft by Panasonic or by United; Inflight Dublin did not load the recordings onto United's aircraft. *Id.* at ¶ 11.  Any attenuated

and indirect contact Inflight Dublin may allegedly have had with New York was created by the acts and decisions of United, not by Inflight Dublin's own acts.

## III.   ARGUMENT

### A. The Assertion of Personal Jurisdiction Over Inflight Dublin Would Exceed the Bounds of Constitutional Due Process Under the Fourteenth Amendment

#### 1. There Is No Basis for Asserting General Jurisdiction

Plaintiffs have asserted no plausible factual basis for the assertion of general personal jurisdiction over Inflight Dublin.  To support general jurisdiction, a foreign corporation's "continuous corporate operations within a state" must be "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  *International Shoe Co. v. Washington,* 326 U.S. 310, 318 (1945).  Here, any contacts that Inflight Dublin is alleged to have had  with the forum state were not continuous or direct, but were sporadic, attenuated and entirely indirect, through the actions of a third party, United, over which Inflight Dublin had no control.  Accordingly, there is no basis for a finding of general jurisdiction.

#### 2. There Is No Basis for Asserting Specific Jurisdiction

As to specific jurisdiction, Plaintiffs' allegations against Inflight Dublin all assert claims of secondary liability, *i.e.,* contributory infringement or vicarious liability, deriving from the primary alleged infringement by co-defendant United Airlines ("United"), which made the allegedly infringing performances at issue in this case.  Plaintiffs' pre-motion letter to this Court dated April 10, 2014 ("Letter") asserts at 2, for example, that "Plaintiffs have stated a claim of *secondary copyright infringement* against Inflight [Dublin]" and that

"Plaintiffs have pled in the Amended Complaint all facts necessary to state a claim for *secondary liability* against Inflight [Dublin]" (emphasis added).  In asserting personal jurisdiction, Plaintiffs' Letter continues at 3 that "[t]here is no dispute that *secondary copyright infringement* is a tort" (emphasis added).

Plaintiffs' entire case against Inflight Dublin therefore rests on allegations of secondary infringement, as it necessarily must because Inflight Dublin at no time took any action in the United States, and is not plausibly alleged to have done so.  Plaintiffs fail to cite a single authority, however, in which any court has properly asserted personal jurisdiction over a party whose only alleged connection with the forum state is *secondary* participation in an alleged primary infringement in the forum by a third party.  Well-settled Supreme Court precedent flatly precludes personal jurisdiction in such circumstances.  See generally *Hanson v. Denckla,* 357 U.S. 235 (1958) ("[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state").

The Court's personal jurisdiction over co-defendant United, therefore, cannot establish that Inflight Dublin had the necessary minimum contacts simply by virtue of Inflight Dublin's dealings with the air carrier, or by virtue of the Plaintiffs' alleged harm in New York.  In fact, as a unanimous Supreme Court very recently held in *Walden v. Fiore*, 134 S. Ct. 1115 (Feb. 25, 2014),

> a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. See *Rush* [*v. Savchuk*, 444 U.S. 320, 322 (1980)] ("Naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum. The requirements of *International Shoe*, however, must be met

*as to each defendant* over whom a state court exercises jurisdiction"). Due process requires that a defendant be haled into court in a forum State based on *his own affiliation* with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State. *Burger King,* [*Corp. v. Rudzewicz,* 471 U. S. 462, at 475 (1985)](internal quotation marks omitted).

*Walden* at 1123 (emphasis added).

*Walden* noted that this jurisdictional standard flows directly from the Due Process Clause of the Fourteenth Amendment, which constrains a State's authority to bind a nonresident defendant to a judgment of its courts. *Id.* at 1122, citing *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 291 (1980).[1] Each nonresident must have "certain minimum contacts . . . such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington*, 326 U. S. 310, 316 (1945) (quoting *Milliken* v. *Meyer*, 311 U. S. 457, 463 (1940)).

As the unanimous *Walden* Court continued:

For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant in this case.

First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State. *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (1985)[emphasis original]. Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant — not the convenience of plaintiffs or third parties. See *World-Wide Volkswagen Corp.*[v. *Woodson*, 444 U.S. at 291-292.] We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. See *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U. S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").

---

[1] See also *Hanson*, 357 U.S. at 250-51 ("restrictions on the personal jurisdiction of state courts. . . . are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States").

156894                                    5

....

Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. See, *e.g., International Shoe*[*Co. v. Washington*], supra, at 319 (Due process "does not contemplate that a state may make binding a judgment *in personam* against an individual . . . with which the state has no contacts, ties, or relations"); *Hanson*, supra, at 251 ("However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the `minimal contacts' with that State that are a prerequisite to its exercise of power over him").

*Walden* at 1121-22.

*Walden* involved a *Bivens* claim against a DEA airport inspector in Georgia who allegedly deprived plaintiffs of funds they were carrying in their luggage, and then allegedly filed a false affidavit with a government office in Georgia to prevent the return of those funds to plaintiffs.  The action was brought in Nevada by Nevada residents. The District Court dismissed the claim on personal jurisdiction grounds, finding that the Georgia defendant, acting entirely in Georgia, lacked sufficient minimum contacts with Nevada. The Ninth Circuit reversed:

According to the Court of Appeals, petitioner "expressly aimed" his submission of the allegedly false affidavit at Nevada by submitting the affidavit *with knowledge* that it would affect persons with a "significant connection" to Nevada. After determining that the delay in returning the funds to respondents caused them "foreseeable harm" in Nevada and that the exercise of personal jurisdiction over petitioner was otherwise reasonable, the court found the District Court's exercise of personal jurisdiction to be proper. The Ninth Circuit denied rehearing en banc, with eight judges, in two separate opinions, dissenting.

*Walden* at 1120-1121 (citations omitted, emphasis added).

This alleged combination of knowledge and "foreseeable harm" was, however, deemed jurisdictionally insufficient as a matter of law by the Supreme Court:

156894                                6

It is undisputed that no part of petitioner's course of conduct occurred in Nevada. Petitioner approached, questioned, and searched respondents, and seized the cash at issue, in the Atlanta airport. It is alleged that petitioner later helped draft a "false probable cause affidavit" in Georgia and forwarded that affidavit to a United States Attorney's Office in Georgia to support a potential action for forfeiture of the seized funds. [Citation omitted.] Petitioner never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada. In short, when viewed through the proper lens — whether the *defendant's* actions connect him to the *forum* — petitioner formed no jurisdictionally relevant contacts with Nevada.

*Walden* at 1124 (emphasis original).

The *Walden* plaintiffs' residence in Nevada, and the alleged occurrence of harm in Nevada, even if known to or foreseeable by Defendant, did not establish the requisite minimum contacts:

[T]he Court of Appeals looked to petitioner's knowledge of respondents' "strong forum connections." [Citation omitted]. In the court's view, that knowledge, combined with its conclusion that respondents suffered foreseeable harm in Nevada, satisfied the "minimum contacts" inquiry. [Citation omitted.] **[*1125]**

This approach to the "minimum contacts" analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis.

....

[M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Id.* at 1124-25.[2]

---

[2] Thus, the Supreme Court has rejected a plaintiff's argument that a Florida court could exercise personal jurisdiction over a trustee in Delaware based solely on the contacts of the trust's settlor, who was domiciled in Florida and had executed powers of appointment there. *Hanson v. Denckla*, 357 U.S. 235, 253–254, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The facts here preclude a finding of personal jurisdiction over Inflight Dublin even more strongly than in *Walden*, which was also resolved on a motion to dismiss. Unlike the DEA agent's actions at the Atlanta airport in *Walden*, Inflight Dublin's activity was fully licensed and lawful in Ireland, and the allegedly infringing performances in New York were carried out entirely by a third party. Plaintiffs here thus seek to bootstrap a finding of personal jurisdiction from Inflight Dublin's alleged knowledge of *two* other parties' contacts with the forum state: United's alleged performances and Plaintiffs' alleged injury. If *Walden* prohibits a finding of personal jurisdiction where the direct tortfeasor himself has such knowledge and caused such alleged "injury", it follows *a fortiori* that no proper showing of jurisdiction can be made here, in a case alleging only secondary liability, not direct infringement.

Merely providing licensed recordings to United in Ireland with a general understanding that United's aircraft fly to many places, as Plaintiffs allege, is therefore not sufficient. *See, e.g.*, *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State"). In Plaintiffs' allegations, the "mere likelihood" of the subject recordings finding their way to New York – through the acts of third party United -- is the *only* link between Inflight Dublin and the forum State.

---

The Supreme Court has similarly held that Oklahoma courts cannot exercise personal jurisdiction over an automobile distributor that supplies New York, New Jersey, and Connecticut dealers based only on an automobile purchaser's act of driving it on Oklahoma highways. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980).

156894                                    8

Accordingly, Plaintiffs cannot carry their burden of establishing the Court's personal jurisdiction over Inflight Dublin simply by virtue of Inflight Dublin's alleged dealings with a third party, United, or the alleged "foreseeable harm" to Plaintiffs. As the *Walden* Court concludes, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum state." *Walden*, 134 S. Ct. at 1126.  And the *Walden* result makes clear that merely *knowing* that a plaintiff or third party has contacts with the forum state does not "create contacts" with that state on defendant's part.

The unanimous decision in *Walden*, based on "well-established principles of personal jurisdiction," *id.* at 1126, therefore confirms the observation in a leading copyright treatise that an assertion of personal jurisdiction over a defendant solely on the basis of alleged secondary liability is a violation of due process that "cannot be constitutionally defended" absent further evidence of purposeful availment.  William F. Patry, PATRY ON COPYRIGHT at § 17:172 (Thomson/West 2014). We are aware of no authority whatsoever for Plaintiffs' sweeping assertion of personal jurisdiction here, where there is no purposeful availment by the alleged secondary infringer, beyond its alleged "knowledge" of a subsequent infringement by a third party, or alleged harm to Plaintiffs, in the forum State.

The case should therefore be dismissed with prejudice as to Inflight Dublin for lack of personal jurisdiction.

## B.    Inflight Dublin's Acts Have Not Caused Injury Within New York

As set forth above, Plaintiffs' assertion of personal jurisdiction here must be denied on due process grounds under *Walden* and the cases cited therein.  Plaintiffs' asserted basis for jurisdiction also fails under the plain text of the New York long-arm statute, C.P.L.R. §

156894                                        9

302(a)(3)(ii), as recently interpreted by the Second Circuit, because Inflight Dublin's alleged acts (as distinct from the acts of any other defendant) did not "cause injury to persons or property within the state," as the C.P.L.R. requires. See *Troma Entertainment v. Centennial Pictures, Inc.,* 729 F.3d 215 (2d Cir. 2013)("*Troma*").

In *Troma*, a New York film company hired one of the defendants to seek German distribution for two of plaintiffs' low budget comedy/horror films, "Citizen Toxie: Toxic Avenger Part IV" and "Poultrygeist: Night of the Chicken Dead." Unbeknownst to plaintiff, defendant had previously purchased legitimate German-language DVD copies of the two films in Germany and delivered them to a distributor there for purposes of German distribution, all without informing plaintiff.

Troma alleged that personal jurisdiction was proper under § 302(a)(3)(ii), claiming that defendant's acts in Germany caused injury to the filmmaker in New York. The district court held to the contrary, and the Second Circuit unanimously affirmed. Distinguishing the New York Court of Appeals decision in *Penguin Group (USA) Inc. v. American Buddha*, 16 N.Y.3d 295 (2011)("*Penguin Group*"), the Second Circuit in *Troma* held that a copyright owner may not assert injury in New York under the C.P.L.R. simply by virtue of the copyright owner's presence in the state:

> It is well-settled that "residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction under section 302(a)(3)." *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980). Honoring this principle, we have rejected as insufficient to support the exercise of jurisdiction over a defendant allegations of "remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here." *Lehigh Valley Indust. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975); *see also American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 433 (2d Cir.

1971) (rejecting as insufficient "harm in New York in the sense that any sale lost anywhere in the United States affects [the plaintiff's] profits"). In sum, "[t]he suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes."

*Troma*, 729 F.3d at 218.

There is no plausible, factually-supported allegation in the Amended Complaint of any cognizable injury to Plaintiffs in New York caused directly by Inflight Dublin's actions in Ireland, nor could there be. As the Second Circuit held in *Troma*, Plaintiffs here "ha[ve] not articulated a non-speculative and *direct* injury to person or property in New York that goes beyond the simple economic losses that its New York-based business suffered." *Troma* at 220 (emphasis added). The allegation in ¶ 20 of the Amended Complaint ("Plaintiffs have their principal place of business in New York and in this District. Accordingly, Plaintiffs have been injured in New York as a result of Defendants' infringing conduct") is both improperly conclusory under *Bell Atlantic v. Twombly*, 550 U.S.544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and is flatly incorrect as a matter of substantive law under *Troma*. Therefore, over and above the due process infirmities of the Amended Complaint, Plaintiffs have alleged no plausible basis on which the Court can assert personal jurisdiction under C.P.L.R. § 302(a)(3)(ii).

Plaintiffs' attempt to avoid this result under the claimed authority of *Penguin Group* is without merit. The Second Circuit itself recognized in *Troma* that *Penguin Group* is "carefully cabined . . . so as to address *only* copyright infringement accomplished by uploading to the Internet." *Troma*, 729 F.3d at 219 (emphasis added).

156894

As noted in *Troma*, the appellate history of *Penguin Group* confirms that the *Penguin Group* court itself carefully articulated its ruling in the narrowest possible terms, by limiting the scope of the question that had been certified to it by the Second Circuit. The Second Circuit had asked the Court of Appeals to determine: "In copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302 (a) (3) (ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?" *Id.* at 219.  The New York Court of Appeals, however, modified the question to read: "In copyright infringement cases *involving the uploading of a copyrighted printed literary work onto the Internet*, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302 (a) (3) (ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?" *Id.* (emphasis added).  By doing so, *Penguin Group* explicitly declined to address whether a New York copyright holder sustains an in-state injury pursuant to N.Y. C.P.L.R. § 302(a)(3)(ii) outside the context of uploading infringing content to the internet. *Id.*

The *Penguin Group* reasoning was explicitly influenced by the consequences of the uploading of the copyrighted material to the internet – once uploaded, anyone on the internet who wanted to access the work could do so – thus the court found the harm was virtually impossible to localize.  As in *Troma*, however, that is not the case here, where the allegedly infringing public performances occur on specific aircraft in specific locations.  The alleged infringements here are no less localized than unlicensed juke box performances in restaurants, and in any event they were not "accomplished by uploading to the internet," which *Troma* notes is the only factual context governed by *Penguin Group*. *Troma*, 729 F.3d at 219.

The *Penguin Group* analysis was also based in part on the court's holding that online uploading of literary works is a cognizable New York injury because it may harm the "bundle of rights" held by a New York based copyright owner in New York.  The Second Circuit in *Troma* viewed this as a "theory of injury" that could satisfy section 302(a)(3)'s injury requirement only in the limited case of uploading copyrighted works for access over the internet. *Id.* at 220.  The *Troma* court recognized that infringement comes in many forms and it is not the case that any infringement anywhere can be said to diminish incentives to engage in a creative enterprise, or to harm, beyond the immediate loss of profits, the continuing value of one or more of a copyright holder's bundle of rights. *Troma* at 220.

As in the present case, the facts at issue in *Troma* were more like "traditional commercial tort cases" in which "the place where [the plaintiff's] business is lost or threatened" exerted a significant gravitational influence on the jurisdictional analysis.  In *Troma*, that was Germany; here it is Ireland, where all of Inflight Dublin's activities took place.  The *Troma* court found nothing in *Penguin* which "relieves intellectual property owners of the obligation, in each case, to allege facts demonstrating a non-speculative and *direct* New York-based injury to its intellectual property rights." *Troma* at 220 (emphasis added).  There was no such direct New York injury in *Troma* from defendant's acts in Germany, and there is none here from Inflight Dublin's acts in Ireland.

Finally, even if this Court were to apply the *Penguin Group* analysis in the very different factual setting of this case, *Penguin Group* involved a claim of direct liability, not secondary liability. The defendant *itself* uploaded the unauthorized content to the internet. *Penguin Group* therefore does not speak to the due process concerns addressed above in

Section III.A., where the asserted basis of jurisdiction is not the defendant's own acts, but its alleged knowledge of the acts of third parties. When the focus is properly on the acts of Inflight Dublin, as the Constitution requires, the Second Circuit's controlling ruling in *Troma* produces a result which satisfies both the Due Process Clause and N.Y. C.P.L.R. § 302(a)(3)(ii).

### C.    Amendment Would be Futile

Plaintiffs' Letter proposed that Plaintiffs be granted leave to make various amendments to the allegations of the Amended Complaint. The proposed amendments would be futile and would not overcome the fundamental infirmities of Plaintiffs' allegations under the Due Process clause and the New York long-arm statute.  Any motion to replead should therefore be denied.  *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[A] futile request to replead should be denied.")  The Second Circuit has not hesitated to affirm the denial of a motion to amend in cases involving a manifest lack of personal jurisdiction, such as the one here. *Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*, No. 13–1639–cv, 2014 WL 1099222, at *3 (2d Cir. Mar. 21, 2014) (Summary Order) (Holding that leave to amend would be futile because appellants had not pointed to a specific basis for the exercise of jurisdiction); *Smith v. U.S.*, No. 13–292–cv, 2013 WL 6596922, at *1 (2d Cir. Dec. 17, 2013) (Summary Order) (Holding that where plaintiff had alleged no facts in claims against certain defendants that indicated a connection with the state of New York, dismissal for lack of personal jurisdiction and denying leave to amend was appropriate, because the flaws in plaintiff's complaint, even liberally read, were fatal substantive defects that could not be

cured by further pleading); *Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010) (affirming district court's determination that amendment would be futile where it had already determined that plaintiffs had failed to demonstrate personal jurisdiction).

Describing additional details of the technical steps performed by Inflight Dublin in Ireland, or naming specific airports into which United's aircraft allegedly flew, as Plaintiffs' Letter proposes, does nothing to cure the jurisdictional deficiencies of Plaintiffs' proposed amendment.  Further, Plaintiffs' Letter (at 3) references the specific airports in connection with music in CD form, which is not digitally transmitted by United and thus does not violate 17 U.S.C. § 106(6). Such amendments would be futile, both substantively and jurisdictionally.

Equally unavailing to Plaintiffs is their Letter's reference to language in a 2009 agreement between United and Inflight Dublin which pre-dates the statute of limitations in this action, particularly because such language was expressly superseded in the parties' 2010 agreement, as Plaintiffs well know.  More fundamentally, under *Walden*, personal jurisdiction cannot rest merely on a non-resident's alleged knowledge of a third party's connection with the forum state, and Inflight Dublin's knowledge is the only issue as to which the cited 2009 language is even arguably relevant.

Finally, Plaintiffs' Letter makes a number of conclusory and implausible factual misstatements that would not establish personal jurisdiction if they were incorporated into a further Amended Complaint:

1.      Plaintiffs allege (at 2) that Inflight Dublin has "duplicated Plaintiffs' copyright sound recordings and/or music videos" "without authority."  The allegation is

factually incorrect, White Decl. at ¶ 8, but even if true it would not establish personal jurisdiction because the activity occurred entirely in Ireland, and under license from the Plaintiffs' own Irish licensing agent, PPI. Inflight Dublin paid PPI for these licenses, on time and fully.

        2.    Plaintiffs allege further (at 2) that "the infringing copies" (they were actually PPI-licensed copies) "were then installed" on United aircraft; Inflight Dublin has never installed any copies on any aircraft, White Decl. at ¶ 11, nor do Plaintiffs allege any plausible factual basis to contend otherwise. Further, the alleged conduct, even had it occurred, would not establish the necessary minimum contacts between Inflight Dublin and the forum state of New York.

        3.    Plaintiffs further allege (at 2) that they never authorized "Inflight [Dublin] or United to use these recordings in the United States," but there is no plausible factual basis for any claim or inference that Inflight Dublin ever made any use of any recordings in the U.S. Only by lumping Inflight Dublin together with United (as the Fourteenth Amendment forbids, see *supra* at III.A.) can this allegation even purport to support personal jurisdiction against Inflight Dublin.

        4.    Plaintiffs assert (at 2) that "United and Inflight [Dublin] have continued to offer United's passengers access to Plaintiffs' copyrighted works." Again, there is no plausible factual basis for any claim or inference that Inflight Dublin ever "offered access" to United passengers. Inflight Dublin duplicated recordings, in Ireland, under license. Moreover, Plaintiffs' claim (at 5) that "Defendants – including Inflight [Dublin] – made

Plaintiffs works available" to airline passengers fails to state a violation of any of Plaintiffs'
exclusive rights under § 106 of the Copyright Act.  There is no express "making available"
right for sound recordings under U.S. law,[3] but instead a right to publicly perform "by means
of a digital audio transmission," 17 U.S.C. § 106(6).  Inflight Dublin made no such
performances, and any contrary allegation is both unsupported and factually implausible.

      5.     Plaintiffs allege further (at 2) that Inflight Dublin "received significant
fees for its services from goods used and services rendered in New York."  Inflight Dublin
offered no goods or services in New York, at any time.  It rendered services to United, in
Ireland.

The above conclusory allegations do not plausibly state a viable predicate for personal
jurisdiction as against Inflight Dublin.  Nor can Plaintiffs plausibly allege that Inflight Dublin
exercised control over the allegedly infringing digital transmissions on United's aircraft, a
necessary element of any claim of vicarious liability. See *Sygma Photo News, Inc. v. High
Society Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985). Lacking such direct control, no claim
of vicarious liability is possible, even where the relationship between alleged primary and
secondary infringers is far closer than that of United and Inflight Dublin here. *See Banff Ltd.
v. Limited, Inc.*, 869 F. Supp. 1103, 1110 (S.D.N.Y. 1994) (parent corporation not vicariously
liable for infringement by subsidiary, where subsidiary controlled day-to-day activities).
Contrary to Plaintiffs' proposed allegations (Letter at 2), Inflight Dublin did not "manage" the
on-board music offering of United. White Decl. at ¶ 6. Inflight Dublin merely duplicated

---

[3] See 79 Fed. Reg. 10571 (Vol. 79, No. 37, Feb. 25, 2014), U.S. Copyright Office *Study on
the Right of Making Available: Comments and Public Roundtable* concerning, *inter alia*, "the
feasibility and necessity of amending U.S. law to strengthen or clarify our law in this area."

recordings under a legitimate and fully-paid license from PPI.

Accordingly, Plaintiffs cannot allege any plausible, factually-supported basis for personal jurisdiction over Inflight Dublin in connection with its alleged liability in this action. Any attempted further amendment of the Complaint would therefore be futile.

## CONCLUSION

Based on the above reasons and authorities, Inflight Dublin respectfully requests that its motion to dismiss the Amended Complaint as against Inflight Dublin be granted in all respects.

Dated: New York, New York
       May 23, 2014

REITLER KAILAS & ROSENBLATT LLC

Robert W. Clarida
885 Third Avenue, 20th Floor
New York, NY 10022
(212) 209-3044
rclarida@reitlerlaw.com
*Attorneys for Defendant Inflight Audio Ltd.*

156894                                    18