## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ARISTA MUSIC, ARISTA MUSIC LLC,
LAFACE RECORDS LLC, SONY MUSIC
ENTERTAINMENT, SONY MUSIC
ENTERTAINMENT US LATIN LLC, AND
ZOMBA RECORDING LLC,

*Plaintiffs*,

v.

UNITED AIRLINES, INC.; INFLIGHT
PRODUCTIONS LTD.; and INFLIGHT
AUDIO LTD.,

*Defendants*.

13 Civ. 7451 (AT)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION TO INFLIGHT AUDIO LTD.'S MOTION
TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(2) AND IN
SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED
COMPLAINT AND/OR TAKE JURISDICTIONAL DISCOVERY**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND AND NATURE OF THE CLAIMS .......................................... 3

   I.   FACTS ALLEGED IN THE AMENDED COMPLAINT. ........................................ 3

   II.  ADDITIONAL FACTS RELATED TO PERSONAL JURISDICTION THAT
       PLAINTIFFS REQUEST LEAVE TO ADD TO A SECOND AMENDED
       COMPLAINT. ............................................................................................................ 4

   III. NATURE OF THE CLAIMS ..................................................................................... 6

ARGUMENT ....................................................................................................................... 7

   I.   PLAINTIFFS' REQUEST FOR LEAVE TO FILE A SECOND AMENDED
       COMPLAINT SATISFIES THE APPLICABLE LEGAL STANDARDS. ...................... 7

   II.  INFLIGHT DUBLIN'S CONDUCT RENDERS IT SUBJECT TO THIS COURT'S
       PERSONAL JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE. ......... 9

      A.  Inflight Dublin Has Committed Tortious Acts In Ireland And Plaintiffs' Claims
          Against Inflight Dublin Arose From Those Tortious Acts. ...................................... 10

      B.  Inflight Dublin's Tortious Acts Caused Injury In New York. ................................... 13

      C.  Inflight Dublin Expected Or Should Reasonably Have Expected Its Conduct To Have
          Consequences In New York. ................................................................................. 15

      D.  Inflight Dublin Has Derived Substantial Revenue From International Commerce. ... 17

   III. THE EXERCISE OF JURISDICTION OVER INFLIGHT DUBLIN COMPORTS WITH
       THE REQUIREMENTS OF DUE PROCESS. .............................................................. 17

      A.  Inflight Dublin Maintained Sufficient Contacts With New York To Justify The
          Exercise Of Jurisdiction. ...................................................................................... 18

      B.  The Court's Exercise Of Personal Jurisdiction Over Inflight Dublin Would Comport
          With Traditional Notions Of Fair Play And Substantial Justice. ............................... 23

   IV. FEDERAL RULE OF EVIDENCE 408 IS NOT RELEVANT TO THE INSTANT
       APPLICATION TO AMEND THE COMPLAINT. ....................................................... 24

   V.  IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO CONDUCT
       JURISDICTIONAL DISCOVERY. .............................................................................. 26

   VI. THE COURT SHOULD ALLOW PLAINTIFFS TO AMEND THE COMPLAINT TO
       INCLUDE ALLEGATIONS THAT DEFENDANTS ALSO INFRINGED PLAINTIFFS'
       COPYRIGHTED COVER ART AND TO ADD INFLIGHT PRODUCTIONS USA INC.
       AS A PARTY. ............................................................................................................ 28

CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.I. Trade Fin., Inc. v. Petra Bank*,
    989 F.2d 76 (2d Cir. 1993)..................................................................................9

*Alto Products Corp. v. Ratek Industries Ltd.*,
    No. 95 Civ. 3314 (LMM), 1996 WL 497027 (S.D.N.Y. Sept. 3, 1996)................................22

*Andy Stroud Inc. v. Brown*,
    No. 08 Civ. 8246(HB), 2009 WL 539863 (S.D.N.Y. March 4. 2009) .............................18, 23

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003)..................................................................................27

*Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp.*,
    66 F. Supp. 2d 454 (E.D.N.Y. 1999) .........................................................................23

*Budco v. The Big Fights, Inc.*,
    594 F.2d 900 (2d Cir. 1979)....................................................................................9

*Bulger v. Royal Doulton, PLC*,
    No. 05 Civ. 7709(DAB), 2006 WL 3771016 (S.D.N.Y. 2006) ................................................9

*Burchette v. Abercrombie & Fitch Stores, Inc.*,
    No. 08 Civ. 8786(RMB)(THK), 2009 WL 856682 (S.D.N.Y. March 30, 2009) ...............9, 27

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..............................................................................................8

*Calder v. Jones*,
    465 U.S. 783 (1984)..........................................................................................18, 19

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
    4 N.Y.3d 540 (2005) ............................................................................................7

*Capitol Records, LLC v. VideoEgg Inc.*,
    611 F. Supp. 2d 349 (S.D.N.Y. 2009)....................................................................16, 24

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)...............................................................................10, 19

*Dan-Dee International Ltd. v. Kmart Corp.*,
    No. 99Civ.11689(DC), 2000 WL 1346865 (S.D.N.Y. Sept. 19, 2000)..................................22

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
  571 F. Supp. 2d 458 (S.D.N.Y. 2008).....................................................................15

*Foman v. Davis*,
  371 U.S. 178 (1962)........................................................................................28

*G.H Bass & Co. v. Wakefern Food Corp.*,
  1991 WL 285622 (S.D.N.Y. Dec. 31, 1991) ........................................................23

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
  443 F.2d 1159 (2d Cir. 1971)........................................................................... 11

*Gordy v. The Daily News, L.P.*,
  95 F.3d 829 (1996).....................................................................................18, 19

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
  425 F.3d 158 (2d Cir. 2005).............................................................................10

*Hallmark v. Cohen & Slamowitz, LLP*,
  283 F.R.D. 136 (W.D.N.Y. 2012).....................................................................26

*Hanson v. Denckla*,
  357 U.S. 235 (1958).......................................................................................21

*Int'l Bus. Machines Corp. v. BGC Partners, Inc.*,
  No. 10 Civ. 128, 2013 WL 1775367 (S.D.N.Y. Apr. 25, 2013)...............................26

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984).......................................................................................18

*LaMarca v. Pak-Mor Mfg. Co.*,
  95 N.Y.2d 210 (2000) ....................................................................................17

*M. Shanken Commc'ns., Inc. v. Cigar500.com*,
  No. 07 Civ. 7371 (JGK), 2008 WL 2696168 (S.D.N.Y. 2008) ..............9, 18, 23, 24

*McGraw-Hill Cos. Inc. v. Ingenium Techs. Corp.*,
  375 F. Supp. 2d 252 (S.D.N.Y. 2005)................................................................17

*Penguin Group (USA) Inc. v. Am. Buddha*,
  16 N.Y.3d 295 (2011) ...........................................................................10, 13, 14

*Strategem Dev. Corp. v. Heron Int'l N.V.*,
  153 F.R.D. 535 (S.D.N.Y. 1994) ......................................................................27

*Troma Entertainment Inc. v. Centennial Pictures Inc.*,
  729 F.3d 215 (2d Cir. 2013)............................................................................15

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ............................................................... 20

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ................................................................... 21

STATUTES

17 U.S.C. § 106(1), (6) ..................................................................... 6

17 U.S.C. § 301(c) ............................................................................. 7

C.P.L.R. § 302(a) .................................................................. 10, 13, 17

Federal Rule of Evidence 408(a)(2) ................................... 24, 25, 26

OTHER AUTHORITIES

Robert W. Clarida, COPYRIGHT LAW DESKBOOK 368 (BNA 2009) ............ 21

William F. Patry, 5 PATRY ON COPYRIGHT § 17:172 (2014) ................. 23

Plaintiffs Arista Music, Arista Music LLC, LaFace Records LLC, Sony Music Entertainment, Sony Music Entertainment US Latin LLC, and Zomba Recording LLC (collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion of Defendant Inflight Audio Ltd. ("Inflight Dublin") to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and in support of Plaintiffs' Motion for Leave to File a Second Amended Complaint.

## PRELIMINARY STATEMENT

This action arises from the fact that, for many years, Defendant United Airlines, Inc. and its predecessor company, Continental Airlines, Inc. ("Continental") (together, "United") have used Plaintiffs' copyrighted sound recordings and music videos in their inflight entertainment services without any license to exploit these materials within the United States. Inflight Dublin, along with Defendant Inflight Productions Ltd. ("Inflight Productions") have long served as contractors to United—creating audio programs, managing the provision of musical content for United, and duplicating Plaintiffs' copyrighted sound recordings for use in United's inflight music services on flights throughout the United States, including in New York.

In its motion, Inflight Dublin attempts to characterize itself as a passive vendor whose activities are licensed and entirely confined to Ireland. Neither assertion is true. First, when Inflight Dublin claims its activities are "licensed," it is referring to a license from an Irish rights society, Phonographic Performance Ireland ("PPI"). While that license permits it to reproduce certain recordings in Ireland, it does not authorize reproductions that will be used outside of Ireland. To the contrary, the license expressly *prohibits* Inflight Dublin from providing copies for use outside of Ireland. The license also expressly states that it does not authorize any public performances of the duplicated recordings.

Second, Inflight Dublin runs an international operation. Its business model is based on duplicating copyrighted content for distribution to airline clients worldwide—including for United in the State of New York. Indeed, until recently, Inflight Dublin boasted on its website that it had "over fifty clients worldwide" and that its "presence in the USA, Middle East, South America, China, Russia, and Southeast Asia enable[d] it to provide a 'local' service to all clients." Lee Decl., Ex. 2. Indeed, underscoring its international activity, ███████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ But it never did so. Instead, Inflight Dublin created an outlaw cottage industry that provided unauthorized content from Ireland to clients with the intent that it would be used in the United States and elsewhere around the world.

All of the elements required to find personal jurisdiction over Inflight Dublin are present here. Inflight Dublin fully intended that its infringing copies of Plaintiffs' sound recordings would enter the New York market. It had a longstanding history of servicing United and delivering, ████████████████, infringing copies of sound recordings into the United States, including to ████████████████████████, for further duplication and uploading onto and use in inflight music services on United aircraft flying throughout the United States, including in and out of New York airports. Thus, Inflight Dublin knowingly and materially contributed to United's infringement of Plaintiffs' copyrights in New York.

Further, as a business specializing in inflight entertainment content and with extensive experience in dealing with the music industry, Inflight Dublin knew—or certainly should have known—that much of the music industry is based in New York, that the majority of the Plaintiffs are located here, that infringing activity was occurring in New York, and that these infringements were causing significant harm to Plaintiffs in New York. Indeed, in its 2009 agreement with

United, Inflight Dublin specifically warranted that it would obtain licenses and permissions from New York-based Sirius XM Radio, ASCAP, BMI and the Harry Fox Agency.

By operating without authorization and thus skirting rightful payment to copyright owners in the United States, Inflight Dublin has been able to price its services low, making these services attractive to the world's airlines, and thus earning significant revenue from United and other airline clients. In sum, Inflight Dublin deliberately built a profitable business based on facilitating the infringement of Plaintiffs' copyrighted sound recordings in the United States and in New York on a massive scale.

For all these reasons, there is no basis for dismissing Inflight Dublin from the action and doing so would be wholly unjust.

## FACTUAL BACKGROUND AND NATURE OF THE CLAIMS

## I.     FACTS ALLEGED IN THE AMENDED COMPLAINT.

Plaintiffs own and/or have the exclusive rights to license a large catalog of sound recordings and music videos protected under the federal copyright statute or New York law. Am. Compl. ¶ 14, ECF 51. Those sound recordings and music videos include works by artists such as Carrie Underwood, Justin Timberlake, Michael Jackson, and Paul Simon, as well as many other artists. *Id.* ¶ 13. Plaintiffs sell and distribute the sound recordings and music videos on CDs and DVDs throughout the United States, including New York, and also sell and distribute them in the form of digital audio files through authorized Internet retailers and streaming services, such as iTunes and Spotify. *Id.* ¶ 15.

For many years, United has used Plaintiffs' sound recordings and music videos in its inflight entertainment services without licenses authorizing the exploitation of these copyrighted materials within the United States. *See id.* ¶¶ 23-29. United has used various contractors to help them provide these services, including Inflight Dublin. *Id.* ¶¶ 18, 27.

Plaintiffs did not learn of Inflight Dublin's role until December 2013, and filed the

Amended Complaint shortly thereafter. In the Amended Complaint, Plaintiffs alleged that

Inflight Dublin created audio programs and managed the provision of musical content for United.

*Id.* ¶ 18. Plaintiffs further alleged that, in doing so, Inflight Dublin duplicated Plaintiffs'

copyrighted sound recordings and/or music videos without proper authorization. *Id.* ¶ 3. With

Inflight Dublin's knowledge, the infringing content was then installed on servers located onboard

aircraft owned or operated by United, where United subsequently used these copies to transmit

performances of Plaintiffs' copyrighted sound recordings and music videos to passengers. *See*

*id.* ¶ 3. During this time, Inflight Dublin received significant fees for its services from goods

used and services rendered in New York and derived substantial revenue from interstate

commerce. *See id.* ¶ 20.[1]

## II. ADDITIONAL FACTS RELATED TO PERSONAL JURISDICTION THAT PLAINTIFFS REQUEST LEAVE TO ADD TO A SECOND AMENDED COMPLAINT.

As discussed herein, the allegations in the Amended Complaint provide a prima facie

basis for the exercise of jurisdiction over Inflight Dublin. However, following the filing of the

Amended Complaint, Plaintiffs obtained further information from documents produced by

United in March 2014 and from other sources that dispel any doubt about the propriety of

exercising jurisdiction over Inflight Dublin. Given Inflight Dublin's refusal to consent to an

amendment of the complaint to add these facts and its tactical gambit to litigate this issue on the

current record, Plaintiffs respectfully request leave to file a Second Amended Complaint with the

---

[1] Plaintiffs further alleged that they never licensed or otherwise authorized Inflight Dublin or United to use these recordings in the United States in the services at issue in this action, and that United and Inflight Dublin have continued to offer United's passengers access to Plaintiffs' copyrighted works, without authorization, including in New York state. *See* Am. Compl. ¶¶ 20, 27.

new factual allegations set forth below.  *See* Lee Decl. Ex. 1.  As set forth in Parts II and III,

*infra*, the following factual allegations conclusively establish personal jurisdiction.

- Inflight Dublin is a company based in Dublin, Ireland, that provides a range of inflight entertainment content services, including creating audio programs and managing the provision of musical content, to more than 50 clients in the world's airline community. *See* Lee Decl., Ex 1.

- Inflight Dublin and Inflight Productions (collectively the "Vendor Defendants") operate global businesses.  The Vendor Defendants duplicate content and provide that content to airlines operating in the United States and throughout the world with the knowledge and intent that the content they duplicate will be used by the airlines, including United, in inflight music services onboard aircraft flying into, out of, and throughout the United States without proper licensing from or payment to copyright owners in the United States. Some of that duplication occurred in foreign countries, and some of that duplication occurred in the United States.  All of the duplication of Plaintiffs' works in suit for the inflight music services at issue in this lawsuit was without proper licensing from or payment to copyright owners in the United States.

- 

  *See* Lee Decl., Ex. 3 at 2, Ex. 4 at 3-4, Am. Compl. ¶ 3.

- 

  .  *See* Lee Decl., Ex. 3 at 2, 31, 42, 49, 65, 76, Ex. 4 at 3.  Inflight Dublin also knew and intended that United would further duplicate and/or use the content on board United's aircraft flying in and out of and throughout the United States, including flights in and out of John F. Kennedy and LaGuardia airports in New York state.  *See* Lee Decl., Ex. 3 at 42, 76; White Decl. ¶ 11.

- United further duplicated the content provided by the Vendor Defendants and installed copies of Plaintiffs' works onboard aircraft located throughout the United States, including in New York.  United then used these copies to transmit performances of Plaintiffs' copyrighted sound recordings and music videos and display cover art[2] to passengers traveling in and out of and throughout the United States, including on flights in and out of John F. Kennedy and LaGuardia airports in New York state.  *See* Lee Decl., Ex. 3 at 42, 76; White Decl. ¶ 11.

---

[2] In addition to these additional facts, Plaintiffs respectfully request leave to add to a Second Amended Complaint allegations that Defendants also infringed Plaintiffs' copyrighted cover art. *See infra* Part VI.

- At no time did Defendants have authorization to duplicate Plaintiffs' works in suit for use in the United States in the inflight music services at issue in this lawsuit or licenses authorizing the public performance or display of these works in suit in the inflight music services at issue in this lawsuit despite knowledge that such licenses were required.



*See* Lee Decl., Ex. 3 at 4.

-  Yet, Defendants never secured any licenses for the public performance of Plaintiffs' works in suit in the services at issue in the lawsuit. *See* Lee Decl., Ex. 4 at 2.

- Inflight Dublin received significant fees from United and more than 50 other clients in the world airline community for services it provided in relation to each airline's inflight music services. *See* Lee Decl., Ex. 2, Ex. 4 at 4.

## III. NATURE OF THE CLAIMS

Plaintiffs have the right to control and authorize the reproduction and public performance of their sound recordings and music videos in the United States pursuant to the federal Copyright Act and applicable state laws. The Copyright Act grants Plaintiffs: the exclusive right to reproduce sound recordings fixed after February 15, 1972, 17 U.S.C. § 106(1); the exclusive right to publicly perform those sound recordings by means of digital audio transmission, 17 U.S.C. § 106(6); and the exclusive right to reproduce and display album cover art, 17 U.S.C. § 106(1), (5).

By congressional design, state law provides exclusive protection against the unauthorized

use of sound recordings created before February 15, 1972 (so-called "pre-1972 recordings").[3] Thus, Plaintiffs' pre-1972 recordings are protected under New York common law. *Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 559–60 (2005). Accordingly, when others wish to copy or publicly perform *any* of Plaintiffs' works in the United States,[4] they must obtain licenses from the Plaintiffs.

Inflight Dublin does not have any license authorizing the duplication of Plaintiffs' works for use in the United States nor does it have a license to publicly perform those works. As noted above, Inflight Dublin's license from PPI allows it to reproduce certain recordings in Ireland, but specifically prohibits it from providing copies for use outside of Ireland. Moreover, the PPI license explicitly states that the license does not cover the public performance of any sound recordings. *See* Lee Decl., Ex. 5 §§ 5.1, 6.4-6.5.

## ARGUMENT

I.   **PLAINTIFFS' REQUEST FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT SATISFIES THE APPLICABLE LEGAL STANDARDS.**

As noted above, Plaintiffs were first advised by the other defendants about Inflight Dublin's role in United's infringements after the commencement of this action. Accordingly, Plaintiffs acted quickly to amend the complaint to add it as a party to avoid delaying the litigation. In confirming the basis for allegations of jurisdiction, it was immediately apparent

---

[3] Section 301(c) of the Copyright Act ensures that robust state protection for pre-1972 recordings is not limited by the Act: "With respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067." 17 U.S.C. § 301(c).
[4] Copyrights typically are owned, managed, and licensed on a territorial basis. Plaintiffs own or exclusively license the U.S. copyright rights and state law rights to their works. Rights to those same works in other countries are generally owned and/or licensed by others—sometimes affiliated companies of Sony Music Entertainment and sometimes not.

that Inflight Dublin was operating an international business with a significant connection to the State of New York.

In drafting the Amended Complaint, Plaintiffs alleged facts supporting personal jurisdiction over Inflight Dublin in general terms because much of the specific information they had obtained in the weeks after Inflight Dublin's role was disclosed came from pre-filing conversations with Inflight Dublin's Irish counsel that were conducted on a not-for-prejudice basis. Plaintiffs have subsequently confirmed that same information from other sources including documents produced by United in March 2014,[5] and have learned additional facts from other sources. These facts are more than sufficient to establish personal jurisdiction over Inflight Dublin. Indeed, the filing of the instant motion confirms that Inflight Dublin fully recognizes the dispositive nature of these facts.

When Inflight Dublin first raised a jurisdictional objection, Plaintiffs replied that the logical and economical procedure would be to file a Second Amended Complaint detailing all of the relevant jurisdictional facts. Such an approach would put all of the relevant facts before the Court and avoid multiple motions on the same subject. Recognizing that once these allegations were added to the Complaint, any jurisdictional objection would be futile, Inflight Dublin refused to consent to an amendment and decided to use a transparently tactical approach of trying to block the addition of these facts in the hope that it could convince the Court to address the jurisdictional issue without considering these material additional allegations.

However, where plaintiffs ask for leave to replead to add additional jurisdictional facts, courts in this district freely grant such leave in the absence of evidence of undue delay, bad faith

_____

[5] On June 2, 2014, United consented to Plaintiffs' citation to and use of the agreements between United and Inflight Dublin that it produced to Plaintiffs during informal settlement discovery.

or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility. *M. Shanken Commc'ns., Inc. v. Cigar500.com*, No. 07 Civ. 7371 (JGK), 2008 WL 2696168, at *8 (S.D.N.Y. 2008); *Bulger v. Royal Doulton, PLC*, No. 05 Civ. 7709(DAB), 2006 WL 3771016, at *8 (S.D.N.Y. 2006); *see also Budco v. The Big Fights, Inc.*, 594 F.2d 900, 902 (2d Cir. 1979).

The Court should grant leave to amend given that: (1) these additional facts conclusively establish that the exercise of personal jurisdiction over Inflight Dublin is proper; (2) Inflight Dublin does not suffer any prejudice given that it can renew jurisdictional objections after the proposed Second Amended Complaint is filed or at the summary judgment stage, *see Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08 Civ. 8786(RMB)(THK), 2009 WL 856682, at *5 n.3 (S.D.N.Y. March 30, 2009); and (3) Inflight Dublin has not asserted, nor is there any basis for, a claim of undue delay, bad faith, or dilatory motive on the part of Plaintiffs, *see M. Shanken Commc'ns*, 2008 WL 2696168, at *8.

On the contrary, as discussed in Part IV, *infra*, Inflight Dublin has manufactured needless costs and delays by refusing to consent to the use of incontestable non-privileged facts, by refusing to consent to the filing of a Second Amended Complaint, and by initiating a needless and expensive round of motion practice.

## II.    INFLIGHT DUBLIN'S CONDUCT RENDERS IT SUBJECT TO THIS COURT'S PERSONAL JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE.

Where there has been no discovery on the issue of personal jurisdiction, plaintiffs need only make a *prima facie* showing of jurisdiction. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993); *Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08 Civ. 8786(RMB)(THK), 2009 WL 856682, at *3 (S.D.N.Y. March 30, 2009).  On a Rule 12(b)(2) motion, where the issue is addressed on allegation and affidavits, "all allegations are construed in

the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *Id.* Plaintiffs' Second Amended Complaint satisfies this standard.

Challenges to personal jurisdiction require a two-part analysis. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). "First, a district court must determine whether, under the laws of the forum state . . . , there is jurisdiction over the defendant. Second, it must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Id.* (internal quotation and alterations omitted); *accord Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163-64 (2d Cir. 2010).

Courts in New York have personal jurisdiction over a defendant where the defendant commits a tort outside of New York that causes harm inside of New York. *See* C.P.L.R. § 302(a)(3)(ii). To satisfy those standards, Plaintiffs must show that: "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should have reasonably expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Group (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011). With the facts alleged in the Amended Complaint and the additional facts that Plaintiffs seek to add to the pleadings, Plaintiffs establish all five elements.

**A. Inflight Dublin Has Committed Tortious Acts In Ireland And Plaintiffs' Claims Against Inflight Dublin Arose From Those Tortious Acts.**

Undeniably, Plaintiffs have alleged that Inflight Dublin has committed tortious acts outside the state and that those acts are the basis for Plaintiffs' federal copyright claims and New York state law claims for common law copyright infringement and unfair competition. It is well

established that "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributing' infringer." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). This liability is predicated on "the common law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor." *Id*. (citation omitted).

The facts alleged in the Amended Complaint and the additional facts that Plaintiffs seek to add to an amended complaint clearly establish that Inflight Dublin committed tortious acts outside New York that serve as the basis of Plaintiffs' claims. ███████████████████

████████████████████████████████████████████████████████████████████

████████████████████████. *See* Am. Compl. ¶ 3; Lee Decl., Ex. 3 at 2-3, 42, 76; Ex. 4 at 3-4. Inflight Dublin understood that these works would be used in the United States. Indeed, ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████. *See* Lee Decl., Ex. 3 at 4, Ex. 4 at 2. However, at no time did Inflight Dublin have authorization to duplicate Plaintiffs' works for use in the United States or to publicly perform in the United States the works in suit. Am Compl. ¶ 27.

Nevertheless, █████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████,

including ████████████████████████. *See* Lee Decl., Ex. 4 at 3. Inflight Dublin did so knowing that United was going to use the programs and media in inflight music services onboard aircraft flying routes in and out of New York. *See* Am. Compl. ¶¶ 20, 27; Lee Decl., Ex. 3 at 76. As the intended result of this collaboration, and with Inflight Dublin's knowledge,

United used these infringing copies to transmit performances of Plaintiffs' copyrighted sound recordings to passengers. Am. Compl. ¶ 3. During this time, Inflight Dublin received significant fees from United for the services it rendered to United and the recordings it delivered to United for use in inflight music services. *See* Am. Compl. ¶ 20; Lee Decl., Ex. 4 at 4. These facts clearly establish that Inflight Dublin was aware of both its own and United's infringements and that it actively and materially encouraged, enabled, facilitated, and assisted United's infringements.

Inflight Dublin's protestations that its license with PPI absolves it of any liability is unavailing. *See* Inflight Dublin Mem. 15-17, ECF 88. Its PPI license does not cover the public performance of any sound recordings and specifically prohibits Inflight Dublin from providing copies for use outside of Ireland or authorizing or permitting any third party to duplicate any sound recordings outside of Ireland. *See* Lee Decl., Ex. 5 at §§ 5.1, 6.4-6.5. Inflight Dublin knew that United and its avionics vendor were further duplicating and performing the recordings ███████████████████████████. *See e.g.*, White Decl. ¶ 11; Lee Decl. Ex. 4 at 2; Ex. 3 at 4.

Equally unavailing is Inflight Dublin's assertion that it was not responsible for securing licenses to enable United's public performance of the audio content for use on United's aircraft after 2009. *See* Inflight Dublin Mem. 15. Tellingly, Inflight Dublin did not provide either its 2009 or 2010 agreements with United in its moving papers. ████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████████



. *See* Lee Decl., Ex. 3 at 4.

*See* Lee Declaration, Ex. 4 at 2. Thus, Inflight Dublin understood that United was publicly performing the recordings duplicated by Inflight Dublin, and that it was Inflight Dublin's obligation to obtain the licenses required for United's use of those recordings.

Accordingly, the Amended Complaint and the facts Plaintiffs seek to add to the Amended Complaint clearly establish claims against Inflight Dublin for federal copyright infringement, state copyright infringement, and unfair competition.

**B. Inflight Dublin's Tortious Acts Caused Injury In New York.**

The situs of the injury suffered as a result of Inflight Dublin's tortious actions is New York. The reasoning of the New York Court of Appeals in *Penguin Group (USA) Inc. v. American Buddha*, 16 N.Y.3d 295, 306 (2011) applies here. In examining personal jurisdiction under Section 302(a)(3)(ii) in *Penguin Group*, the New York Court of Appeals determined that where a non–New York resident website uploaded copies of two books onto the Internet, the situs of the injury for purposes of determining long-arm jurisdiction is the "location of the copyright holder." *Penguin Grp.*, 16 N.Y.3d at 302. The Court reasoned that: (1) where the locus of the injury cannot be circumscribed to a specific geographic area, the location of the

infringement is of little import, inasmuch as the aim of the infringer is to make the copyrighted works available in multiple locations, including in New York, *id.* at 304–05; and (2) there is a direct injury in New York because the violation of the New York copyright holder's right to exclude others from using the property diminishes the incentive to create copyrighted works and causes irreparable harm through possible market confusion, *id.* at 305–07.

The facts alleged in the Amended Complaint and proposed Second Amended Complaint establish that Inflight Dublin sought to make Plaintiffs' copyrighted works available in many places throughout the United States and world and thus that the locus of the injury cannot be circumscribed to a specific geographic area. Regardless of where Inflight Dublin's conduct occurred, Defendants, including Inflight Dublin, acted in concert to duplicate and publicly perform Plaintiffs' works onboard aircraft traveling throughout the United States and the world, including in and out of New York airports, to passengers all over the United States, including in New York, without authorization to do so.

In doing so, Inflight Dublin violated the exclusive rights of the plaintiffs (five of which are either organized and/or have a principal place of business in New York) to license the public performance of the works, thereby reducing the incentive to "continue to invest significant money, time, effort, and creative talent to create, promote, sell, and license their sound recordings and music videos," and thus caused a nonspeculative and direct New York–based injury. *See* Am. Compl. ¶ 13; *Penguin Grp.*, 16 N.Y.3d at 305-07.

Inflight Dublin's reliance on *Troma Entertainment Inc. v. Centennial Pictures Inc.*, 729 F.3d 215 (2d Cir. 2013), is unavailing. In *Troma*, the Second Circuit found no personal jurisdiction because the plaintiff alleged an injury that was clearly circumscribed to a particular locality—Germany. *Troma*, 729 F.3d at 220. The court noted that, while the defendants hatched

the copyright infringement scheme in California and violated the rights of a New York copyright

owner, the illegal distribution was intended to and, in fact, only did occur in Germany. *Id.* Here,

Inflight Dublin facilitated copyright infringement throughout the United States by ███████

████████████████████████████████████████████████████████████████████, with

knowledge that they were further duplicating these recordings and uploading them onto planes

that flew routes throughout the United States, including in New York. *See* Lee Decl., Ex. 3 at

42, 76; White Decl. ¶ 11.

Inflight Dublin is plainly wrong in its assertion that the uploading and unlicensed public

performance of Plaintiffs' sound is somehow analogous to unlicensed jukebox performances in

restaurants. *See* Inflight Dublin Mem. 12. Restaurants are plainly fixed locations. Public

performances in restaurants are thus circumscribed to a specific geographic area in a way that

unauthorized public performances on aircraft are not. United airplanes loaded with Plaintiffs'

sound recordings fly multiple routes with different origin and destination states. Accordingly,

*Troma* is inapposite and the reasoning of *Penguin Group* controls.

**C. Inflight Dublin Expected Or Should Reasonably Have Expected Its Conduct To Have Consequences In New York.**

The facts contained in the Amended Complaint and the proposed Second Amended

Complaint also leave no doubt that Inflight Dublin objectively expected or should reasonably

have expected that its provision of inflight music programs would cause injury and have

consequences in New York.

For this element, "[a]n objective test . . . governs whether a defendant expects or should

reasonably expect his act to have consequences within New York." *Energy Brands Inc. v.

Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467-68 (S.D.N.Y. 2008). The foreseeability of the

injury "must be coupled with evidence of a purposeful New York affiliation, for example, a

discernible effort to directly or *indirectly* serve the New York market." *Energy Brands*, 571 F.
Supp. 2d at 468 (emphasis added) (quoting *Schaadt v. T.W. Kutter, Inc.*, 564 N.Y.S.2d 865, 866
(App. Div. 1991)). "Stated differently, the foreseeability requirement is not satisfied unless there
are tangible manifestations showing that the nondomiciliary defendant . . . either should have
known where [its product was] destined or was attempting to reach a New York market."
*Capitol Records, LLC v. VideoEgg Inc.*, 611 F. Supp. 2d 349, 363-64 (S.D.N.Y. 2009)
(alterations in original) (internal quotation marks omitted).

   **First**, Inflight Dublin both knew that its product was destined for New York and was
attempting to reach a New York market. As discussed above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
and knew that United was going to publicly perform the sound recordings on flights in and out of
New York. *See* Lee Decl., Ex. 3 at 76; White Decl. ¶ 11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[6] *See* Lee Decl., Ex. 3 at 76. Inflight
Dublin was also aware that the sound recordings provided in digital form to United would be
publicly performed on aircraft flying in and out ▮▮▮▮▮▮▮▮▮ in New York state.

   **Second**, as a business specializing in inflight entertainment content, Inflight Dublin has
extensive experience dealing with the music industry, and is well aware that this industry is
overwhelmingly based in New York. Apart from the presence of the Plaintiffs and other major
record labels in New York, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████

████████████████████████████.  *See* Lee Decl., Ex. 3 at 4.

Given the combination of purposeful affiliation with New York and Inflight Dublin's

knowledge that it was providing materials that infringed copyrights of New York companies,

Inflight Dublin had a reasonable expectation that its actions would have consequences in New

York.  *See McGraw-Hill Cos. Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y.

2005).

### D.  Inflight Dublin Has Derived Substantial Revenue From International Commerce.

Inflight Dublin does not and cannot dispute that it derives substantial revenue from

interstate or international commerce.  *See, e.g.*, Lee Decl., Ex. 4 at 4.  The interstate or

international commerce prong of Section 302(a)(3)(ii) is "designed to narrow" the long-arm

reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct,

foreseeable injury within the State but "whose business operations are of a local character."

*LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 215 (2000) (citing *Ingraham v. Carroll*, 90

N.Y.2d 592, 599 (1997)).  Until recently, Inflight Dublin boasted on its website that it had "over

fifty clients worldwide" and had a presence in the "USA, Middle East, South America, China,

Russia, and South East Asia."  Lee Decl., Ex. 2.  Accordingly, Inflight Dublin is inherently

engaged in international commerce and its business operations cannot be characterized as

"local."  *See Lamarca*, 95 N.Y.2d at 215.  This prong is amply satisfied.

### III.  THE EXERCISE OF JURISDICTION OVER INFLIGHT DUBLIN COMPORTS WITH THE REQUIREMENTS OF DUE PROCESS.

To determine whether the assertion of personal jurisdiction comports with due process,

the Court must consider:  (1) whether a defendant has "minimum contacts" with the forum state

and (2) whether the assertion of personal jurisdiction in these circumstances is consistent with

traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

### A. Inflight Dublin Maintained Sufficient Contacts With New York To Justify The Exercise Of Jurisdiction.

"To determine whether minimum contacts exist, the Court considers the relationship among the defendant, the forum, and the litigation." *Andy Stroud Inc. v. Brown*, No. 08 Civ. 8246(HB), 2009 WL 539863, at *8 (S.D.N.Y. March 4. 2009) (internal quotation marks omitted); *M. Shanken Commc'ns.*, 2008 WL 2696168, at *8. Where the claim relates to the defendant's contacts with the forum, minimum contacts exist where the defendant "purposely avail[ed itself] of the privilege of conducting activities within the forum State." *Andy Stroud*, 2009 WL 539863, at *8 (internal quotation marks omitted). "The ultimate purpose of the due process inquiry is to determine whether the defendant could have foreseen that [it] would be haled into court in New York based on [its] activities in the state." *Id.*

The Supreme Court has held that jurisdiction over an out-of-state defendant is constitutional where there are allegations of an intentional action, expressly aimed at the forum state, with the knowledge that the injury would be felt in the forum state. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). This is often referred to as the Calder effects test. In *Calder*, the Supreme Court held there was personal jurisdiction over a Florida reporter and editor in a libel suit brought by a California plaintiff in California state court because the defendants wrote and approved the article at issue, knowing that the article would be distributed in California (among other states), and knowing that the plaintiff lived in California and would suffer injury there. *Id.*[7]

Similarly, in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the Supreme Court held that a New Hampshire federal court had jurisdiction over an out-of-state magazine publisher

---

[7] *See also Gordy v. The Daily News, L.P.*, 95 F.3d 829, 832-35 (1996).

in a libel suit seeking nationwide damages, even though "only a small portion of the copies" at issue were distributed in the forum state, because the defendant had a monthly circulation in New Hampshire. *Id.* at 773-75. The Supreme Court held that, even though it was "undoubtedly true that the bulk of the harm done to [the plaintiff] occurred outside New Hampshire," with this monthly circulation of magazines, the defendant "continuously and deliberately exploited the New Hampshire market" and that it thus "must reasonably anticipate being haled" into a New Hampshire court for a suit involving the magazines. *Id.* at 780-81.[8]

For the reasons articulated in Part II.C, the facts alleged in the Amended Complaint and the additional facts Plaintiffs allege in the proposed Second Amended Complaint significantly exceed the level of allegations found sufficient to satisfy the minimum contacts test in *Calder*, *Keeton*, and *Gordy*. Inflight Dublin purposely chose to affiliate itself with New York when it, without authorization, duplicated Plaintiffs' copyrighted sound recordings for use in the United States in the inflight music services at issue, ████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████—knowing and intending that United or its agent would further duplicate the sound recordings, upload the recordings to United aircraft, and publicly perform the recordings on flights ████████████████████████████ without any license for public performance of these works in the inflight music services at issue. *See* White Decl. ¶ 11. ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



---



[8] *See also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 172 & n.8 (2d Cir. 2010) (holding that it does not offend due process to require a California defendant to answer in New York in a suit for federal and common law trademark infringement where the defendant purposefully directed into New York an allegedly counterfeit bag).

███████████████████████████████████.  *See* Lee Decl., Ex. 3 at 4, Ex 3 at 2.  Inflight Dublin thus was well aware that it might be haled into court in any state in which United was sued, including an action like this one in New York state.  *See id.*

Inflight Dublin's citation to *Walden v. Fiore*, 134 S. Ct. 1115 (2014), is unavailing.  In *Walden*, the defendant, a Drug Enforcement Administration agent, seized money from the plaintiffs in a Georgia airport before plaintiffs departed on a flight to Nevada, where plaintiffs owned a residence.  Plaintiffs then sued the agent in Nevada despite the fact that the agent had never been to Nevada or sent anything there.  The Court specifically held that the exercise of personal jurisdiction over the defendant was improper because he "never traveled to, conducted activities within, or sent anything or anyone to Nevada."  *Id.* at 1124-25.

However, the Court in *Walden*, citing the Calder effects test*,* makes clear that jurisdiction is proper where defendants have "purposely reach[ed] out beyond their State and into another." *Walden*, 134 S. Ct. at 1122-24 (alteration in original) (internal quotation marks omitted).  The Court noted that, "although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, *goods, mail, or some other means*—is certainly a relevant contact."  *Id.* at 1123 (emphasis added) (citation omitted).

Accordingly, there is nothing in Walden the even suggests that exercising jurisdiction over Inflight Dublin would be improper.  Unlike *Walden*, where the defendant never sent anything to the forum state, Inflight Dublin ███████████████████████████ with the knowledge and intent that United or its vendor would further duplicate these infringing recordings and/or that United would use these sound recordings in its inflight music services for

unlicensed public performances on aircraft flying in and out of New York State.[9]  *See* Lee Decl., Ex. 3 at 2, 76, Ex. 4 at 3-4.

Infilight Dublin attempts to argue that the exercise of jurisdiction is not constitutionally permissible in a secondary infringement context.  Inflight Dublin Mem. 9.  However,  numerous federal courts have held that the exercise of personal jurisdiction over an out-of-state defendant is proper in cases alleging secondary infringement under copyright or trademark law, where the defendant supplied the product at issue to a co-defendant with the knowledge that the co-defendant would commit a violation of the Copyright Act or the Lanham Act in the forum state, or where the defendant engaged in activities overseas that it knew and intended would cause harm to intellectual property owners in the forum state.[10]

In *Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., the court applied the *Calder* effects test as an alternative basis to find personal jurisdiction over a defendant that was organized under the laws of the island nation of Vanuatu and that operated out of Australia.  243 F. Supp. 2d 1073 (C.D. Cal. 2003).  The court reasoned that jurisdiction would be proper under *Calder* based on

---

[9] Inflight Dublin's citations to *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), and *Hanson v. Denckla*, 357 U.S. 235 (1958), are plainly inapposite.  In those cases, the Supreme Court found a lack of minimum contacts because the asserted contacts involved unilateral activity of a plaintiff or a third party, rather than the defendants' contacts with the forum states.  In *World-Wide Volkswagen Corp.*, the Court held that an Oklahoma court has no personal jurisdiction over a defendant New York car dealer where the only contact with Oklahoma was that a customer of the dealership happened to be involved in an accident while driving through Oklahoma.  In *Hanson*, the Court held that unilateral activity of third parties who claim some relationship with a non-resident defendant cannot satisfy minimum contacts.  In contrast, the minimum-contacts analysis in this action is focused on Inflight Dublin's *own* contacts with New York and its integral, collaborative role in United's ongoing infringing conduct in New York.

[10] *See also* Robert W. Clarida, COPYRIGHT LAW DESKBOOK 368 (BNA 2009) ("An act performed outside the United States may make the defendant liable by inducing or contributing to another's infringement occurring in the United Sates by supplying such other person with the instruments for committing the infringement, provided the defendant knew or should have know that the other would or could reasonably be expected to commit the infringement." (citation and quotation omitted)).

allegations that the defendant, through its distribution of file-sharing software and operation of a file-sharing website, intentionally and materially contributed to the infringement of the plaintiffs' copyrighted songs, films and television programs, and that it did so with full knowledge that much of the harm from this infringement would be suffered in California. *Id.* at 1090. Notably, the *Grokster* court rejected the defendant's argument that the effects test could apply only to direct infringers, explaining that "[t]he effects test is likely sufficient to show purposeful availment for purposes of the contributory infringement claims" because contributory infringement requires proof of knowledge and material contribution—that is, intentional conduct aimed in some manner at the plaintiff and the forum state. *Id.* at 1088-89.

In *Dan-Dee International Ltd. v. Kmart Corp.*, No. 99Civ.11689(DC), 2000 WL 1346865 (S.D.N.Y. Sept. 19, 2000), the Court upheld the exercise of personal jurisdiction in a contributory copyright infringement suit against Prima, a supplier of children's playthings, despite the fact that Prima that did not own property, keep any bank accounts, or have any employees who worked or resided in New York. The Court based its holding on the facts that (1) Prima provided Kmart with the allegedly infringing toys that Kmart then sold in one of its New York stores; (2) it either knew or should have expected that Kmart would sell the infringing items in New York because "[a]s a manufacturer in the retail toy industry, Prima certainly knew or should have known that Kmart was a national chain with stores in New York"; and (3) Prima had limited regular contact with New York. *Id.* at *4-5.

Similarly, in *Alto Products Corp. v. Ratek Industries Ltd.*, No. 95 Civ. 3314 (LMM), 1996 WL 497027 (S.D.N.Y. Sept. 3, 1996), the court held that the exercise of personal jurisdiction satisfied constitutional requirements where the plaintiff made a prima facie showing that the foreign defendant sold its license plates to an affiliated importer with full knowledge and

intent that the product would be sold in the forum state in violation of the Lanham Act.[11]  Here,

Inflight Dublin regularly supplied a co-defendant, United, with infringing copies of sound

recordings knowing that United would use them to commit multiple acts of copyright

infringement in New York.[12]

For all these reasons, Plaintiffs' proffered facts plainly satisfy the minimum contacts

prong of the due process test for all of Plaintiffs' claims.

### B.  The Court's Exercise Of Personal Jurisdiction Over Inflight Dublin Would Comport With Traditional Notions Of Fair Play And Substantial Justice.

Once minimum contacts have been established, courts consider five factors in evaluating

whether the exercise of personal jurisdiction is reasonable and thus will comport with the notions

of fair play and substantial justice:  "(1) the burden that the exercise of jurisdiction will impose

on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's

interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in

obtaining the most efficient resolution of the controversy; and (5) the shared interests of the

states in furthering social substantive policies."  *Andy Stroud*, 2009 WL 539863, at *8; *M.

Shanken Commc'ns.*, 2008 WL 2696168 at *8.

---

[11] *See also Blue Ribbon Pet Prods., Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F. Supp. 2d 454, 460-61 (E.D.N.Y. 1999) (holding that a Canadian parent corporation's "out-of-state acts contributed to or induced Hagen USA's infringement . . . within New York and are sufficient to subject it to personal jurisdiction in New York."  It further held that "[t]raditional notions of fair play and substantial justice are not offended. . . where Hagen Canada knew or should have known that the [infringing products] would be distributed by Hagen USA in New York"); *G.H Bass & Co. v. Wakefern Food Corp.*, 1991 WL 285622, at *4-5 (S.D.N.Y. Dec. 31, 1991) (finding personal jurisdiction over a non-resident defendant in a contributory trademark infringement suit).

[12] Inflight Dublin's reliance on William F. Patry, 5 PATRY ON COPYRIGHT § 17:172 (2014), is thus unavailing.  *See* Inflight Dublin Mem. 9.  Patry merely states that the exercise of personal jurisdiction over a defendant in a secondary infringement case is constitutionally improper *absent allegations establishing defendant's purposeful availment of the privileges of the forum State*.  Such allegations are plainly present here, as demonstrated above.

First, there is no indication that there is any added burden to Inflight Dublin, an Irish company, by defending the lawsuit in New York. In fact, it is plainly cheaper for all parties to litigate all claims relating to United's infringing use of Plaintiffs' content in a single forum. Second, New York has a strong interest in adjudicating this case because "New York has a substantial interest in protecting the intellectual property rights of copyright and trademark holders." *M. Shanken Commc'ns.*, 2008 WL 2696168 at *9. Third, Plaintiffs' interests in convenient relief are clearly served by litigating in New York because it is the principal place of business for most of them. *See Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d at 365. Fourth, requiring separate legal proceedings against different defendants to address the same claims would not further the judicial system's interest in efficient resolution of this dispute. *See id.* Finally, this Court's resolution of the instant dispute will not conflict with the fundamental substantive social policies of another State because Plaintiffs allege violations of federal copyright law as well as New York common law. *Id.* Accordingly, the Court's exercise of personal jurisdiction would be reasonable and comport with due process.

## IV. FEDERAL RULE OF EVIDENCE 408 IS NOT RELEVANT TO THE INSTANT APPLICATION TO AMEND THE COMPLAINT.

At all times, Plaintiffs have acted diligently in seeking to understand Inflight Dublin's role in enabling and facilitating United's infringing activities. United and Inflight Productions only informed Plaintiffs that Inflight Dublin served as a vendor for duplicating and providing musical content to United Airlines in December 2013, two months after Plaintiffs filed the original Complaint. Lee Decl. ¶ 6; Ex. 6. Notably, United took the position that Inflight Dublin was a proper party to this action. Lee Decl. Ex. 6. Plaintiffs immediately began due diligence into whether Inflight Dublin was a proper party. Shortly thereafter, in February 2014, Plaintiffs filed the Amended Complaint naming Inflight Dublin as a defendant. Am. Compl. (ECF 51).

Further, Plaintiffs have continuously attempted to avoid the expense of costly motion practice and jurisdictional discovery. When Plaintiffs first received notice of Inflight Dublin's intent to move to dismiss under Rules 12(b)(2) and 12(b)(6) on March 25, 2014, Plaintiffs asked Inflight Dublin's counsel for consent to use facts known to both parties to file an amended complaint addressing Inflight Dublin's jurisdictional concerns. *See* Lee Decl., Ex. 7. These additional facts included information that Plaintiffs learned from Inflight Dublin during three pre-filing conversations that had been deemed settlement conversations. By letter on April 3, Plaintiffs again requested Inflight Dublin's consent to use these facts. Lee Decl., Ex. 8. Inflight Dublin never responded to these requests and instead filed its letter requesting leave to move for dismissal. *See* Apr. 3, 2014 Inflight Dublin Letter, ECF 73.

Plaintiffs' opposition to that request stated that they would ask the Court for leave to file a Second Amended Complaint., Apr. 10 and 15, 2014 Letters, ECF 79. Rather than acquiesce to this manifestly reasonable request, Inflight Dublin sought to prevent Plaintiffs from making any use of these facts, by asserting that Federal Rule of Evidence 408(a)(2) precludes Plaintiffs from using facts learned from documents produced during informal pre-settlement conference discovery, simply because the documents were provided in anticipation of settlement discussions. S*ee* Apr. 4. 2014 Clarida Letter, ECF 76.

However, Inflight Dublin's reliance on Rule 408(a)(2) is unavailing for two reasons. First, United consented to Plaintiffs' use of the agreements between United and Inflight Dublin that it produced to Plaintiffs during informal settlement discovery for purposes of Plaintiffs' Opposition and Motion. Clearly, Inflight Dublin has no standing to raise an FRE 408 objection to the use of these documents. Indeed, Plaintiffs are not relying on any information disclosed in

any pre-litigation conversations with Inflight Dublin as the basis for any of the allegations in the proposed Second Amended Complaint.

Second, Rule 408 only protects conduct or statements made during the compromise negotiations about the claim itself, not the underlying facts or documents that happen to be disclosed during settlement discussions.[13]  Moreover, the Advisory Committee Note makes clear that Rule 408(a)(2) operates "to prevent a party from trying to immunize admissible information, such as a pre-existing document, through the pretense of disclosing it during compromise negotiations."  Fed. R. Evid. 408 cmt. re 2006 Amendment.  Thus, any argument by Inflight Dublin that Plaintiffs should be precluded from relying on the underlying jurisdictional facts learned during settlement discussions is entirely without merit.

## V.    IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY.

If the Court determines that Plaintiffs are not entitled to file an amended pleading, or that those proffered allegations do not make a *prima facie* case for personal jurisdiction, then Plaintiffs request that the Court permit them to conduct jurisdictional discovery to establish a

---

[13] As Plaintiffs explained in their April 14, 2014 letter to the Court, (ECF 77), prior to its amendment in 2006, Rule 408(a)(2) expressly provided that the rule "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations."  *Hallmark v. Cohen & Slamowitz, LLP*, 283 F.R.D. 136, 139-40 (W.D.N.Y. 2012) (internal quotation omitted).  The Advisory Committee noted that this sentence was "deleted as superfluous" in 2006, but that "even without the sentence, the Rule cannot be read to protect preexisting information simply because it was presented to the adversary in compromise negotiations."  Fed. R. Evid. 408 cmt. re 2006 Amendment; *see also Hallmark*, 283 F.R.D. at 139-40; *Int'l Bus. Machines Corp. v. BGC Partners, Inc.*, No. 10 Civ. 128, 2013 WL 1775367, at *6 n.6 (S.D.N.Y. Apr. 25, 2013).

further evidentiary basis for each element required for the exercise of personal jurisdiction over Inflight Dublin.[14]

Where jurisdictional facts are in dispute, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation omitted). The court "should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Id.*; *Burchette*, 2009 WL 856682, at *5 (S.D.N.Y. 2009). Even where plaintiffs do not make a *prima facie* showing of personal jurisdiction to withstand a motion to dismiss, the court "has discretion to order further discovery on the jurisdictional issues, provided that plaintiff[s] make[] a threshold showing of jurisdiction and establish that their position is not frivolous." *Strategem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 547 (S.D.N.Y. 1994). Courts in this district have ordered jurisdictional discovery where plaintiffs have "made less than a prima facie showing but made a sufficient start toward establishing personal jurisdiction." *Burchette*, 2009 WL 856682, at *5 (ordering jurisdictional discovery even where "none of [p]laintiff's claims against [a defendant] appear to arise out of [the defendants'] alleged contacts with New York"); *Strategem Dev. Corp.*, 53 F.R.D. at 547-48 (S.D.N.Y. 1994).

It is clear from the discussion in Parts II and III above that Plaintiffs have gone far beyond merely demonstrating a "non-frivolous" position and have made a sufficient start with respect to personal jurisdiction. Plaintiffs have demonstrated sufficient and continuous contacts

---

[14] Specifically, Plaintiffs request that the Court order Inflight Dublin to respond to Plaintiffs' First Set of Requests for Production to Inflight Audio Limited, served May 15, 2014, and to produce witnesses in response to a Rule 30(b)(6) deposition notice to be served by Plaintiffs seeking testimony related to Inflight Dublin's business model, its business relationship with United and contacts with New York, and its knowledge of United's further reproduction and public performance of Plaintiffs' copyrighted recordings that Inflight Dublin duplicated.

with New York in which Inflight Dublin provided unauthorized duplications with the knowledge

and intent that United would use those recordings in unauthorized public performances of

Plaintiffs' sound recordings and music videos to the airline's passengers █████████████

██████████████ to merit jurisdictional discovery.

## VI. THE COURT SHOULD ALLOW PLAINTIFFS TO AMEND THE COMPLAINT TO INCLUDE ALLEGATIONS THAT DEFENDANTS ALSO INFRINGED PLAINTIFFS' COPYRIGHTED COVER ART AND TO ADD INFLIGHT PRODUCTIONS USA INC. AS A PARTY.

Plaintiffs also respectfully request leave to include in an amended pleading allegations of

copyright infringement of cover art[15] and to add Inflight Productions USA, Inc. as a party.

Leave to amend should be "freely give[n]." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*,

371 U.S. 178, 182 (1962). A court should not deny a timely motion to amend unless there is

evidence of undue delay, undue prejudice to the defendant, bad faith, or the proposed

amendment would be futile. *Foman*, 371 U.S. at 182. None of these factors are present here.

Plaintiffs cannot complain that the amendments concerning cover art are untimely or

unduly delayed or that the proposed facts are made in bad faith or with dilatory motive.

Plaintiffs only learned in April 2014 that ███████████████████████████████████████

████████████████ when the parties exchanged documents in advance of the April 29, 2014

settlement conference with Magistrate Judge Cott. ████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████.

---

[15] Records, Cassettes, CDs, DVDs, and other physical media containing sound recording are generally sold in packing with photographs, paintings, or other artistic works on the cover, known as "cover art." The tradition of using cover art has carried over into the digital age so that digital music files are commonly accompanied by cover art for the relevant album. Plaintiffs own or are exclusive licensees of the cover art associated with many of the sound recordings that have been infringed by Defendants. Indeed, the very same copyright registration form for sound recordings also covers the associated cover art.

Plaintiffs likewise cannot complain that Plaintiffs' proposed addition of Inflight

Productions USA Inc. is made with bad faith or dilatory motive. Prior to the filing of the original

Complaint and throughout the litigation, United and Inflight Productions Ltd. maintained that

Inflight Productions Ltd. had been the entity servicing United. *See* Lee Decl. ¶¶ 6, 7. However,

in response to Plaintiffs' request for settlement discovery, on April 4, 2014, ██████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████ Given the recent disclosure of this information, no claim of dilatory

conduct is possible.

There is also no basis for the Defendants to assert that they are unduly prejudiced by the

proposed amendment as these new allegations arise directly from the same operative facts

involving the same parties and the same infringing inflight music services that are the subject of

the Original and Amended Complaints, and the litigation of the claims will involve the same

witnesses and custodians. Defendants have thus had full and fair notice of the nature of

Plaintiffs' claims and the grounds upon which these claims rest.

\*       \*       \*

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Inflight Dublin's Motion to Dismiss or, in the alternative, that the Court allow Plaintiffs leave to file the proposed Second Amended Complaint and/or to conduct jurisdictional discovery, before ruling on the issue of personal jurisdiction over Inflight Dublin.

Dated: June 13, 2014

JENNER & BLOCK LLP

By: _Andrew H. Bart_

    Andrew H. Bart
    Christine I. Lee

919 Third Avenue, 37th Floor
New York, New York 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I, Christine I. Lee, an attorney, hereby certify that on this June 13, 2014, I sent a true and correct copy of the foregoing Memorandum of Law in Opposition to Inflight Dublin's Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(2) and in Support of Plaintiffs' Motion for Leave to File a Second Amended Complaint and/or take Jurisdictional Discovery to counsel of record for Defendants United Airlines, Inc., Inflight Productions Ltd., and Inflight Audio Ltd. listed below via the electronic mail and mail:

> A. John P. Mancini
> Allison Levine Stillman
> Elizabeth C. Winokur
> Mayer Brown LLP (NY)
> 1675 Broadway
> New York, NY 10019
> *Attorneys for Defendant United Airlines, Inc.*

> -and-

> Theodore Conrad Max
> Sheppard, Mullin, Richter & Hampton, LLP (NYC)
> 30 Rockefeller Plaza, 24th Fl.
> New York, NY 10112
> *Attorney for Defendant Inflight Productions Ltd.*

> -and-

> Robert Clarida, Esq.
> Reitler Kailas & Rosenblatt LLC
> 885 Third Avenue, 20th Fl.
> New York, NY 10022-4834
> *Attorney for Defendant Inflight Audio Ltd.*

Dated: June 13, 2014

_____
Christine I. Lee